By the Court.

—The question is, will the Court of Equity interfere to prevent the defendant from recovering at law on this bond.
It is insisted by counsel for the plaintiffs, that H. E. M’Culloch’s lands are confiscated by act of Assembly, therefore he cannot convey, and that the consederation of the bond has failed, therefore the plaintiffs are not bound to pay.
1st. It is to be considered whether the plaintiffs interest which he had acquired under the sale from H. E. M’Culloch, was affected by the act declaring the lands of H. E. M’Culloch, confiscated and forfeited.
At the revolution, the property of the land, within the bounds of the State, was vested in the community or citizens at large, saving the rights of individuals, thus the title and possession of the lands in this State were irrevocably fixed, and so far as respected individuals, beyond the con *494 trol of any future law, which the legislature, then established, might thereafter enact; and a line was then drawn between the public and private property, never thereafter to be violated. By this instrument then, Ray's possession to the lands which he held under the contract aforesaid, was secured to him for ever—what more was necessary for him? We are therefore of opinion, that Ray’s interest was not affected by any of the acts of Assembly.
2d. Is Ray bound to pay the money stipulated by him at the time of the sale, and if he is bound to pay to it, who has a right to demand it? It is said that H. E. M. not having conveyed the legal title, as he had stipulated, he is not entitled to the consideration.
M’Culloch was to convey when Ray paid or tendered the money; but it does not appear, that Ray ever paid or tendered the money, as he might have done, therefore, there was no breach on the part of M’Culloch. But it is said that M’Culloch, by his own act, has disqualified himself to convey the estate. To this there are two answers.
1st. Nine years, or thereabouts, had elapsed, before any inability was attached to M'Culloch, in all which time, Ray might have had a conveyance, on tendering or paying the money.
2d. it does not appear, that M'Culloch was disqualified by act of his own, but by an act of the State, which he could not control; it is true, that he might, within a limited time, by *495 taking the oaths of allegiance to the State, become entitled to the privileges of a citizen; but as he was then resident in his native country, under the government of his lawful sovereign, then at war with this country, this measure might have been attended with difficulty, and a considerable degree of hazard; and his not having availed himself of this indulgence, was certainly no offence against the State, nor a breach of any law, either human or divine. We are therefore, of opinion, that H. E. M'Culloch, is not chargeable in equity, of any breach of the contract on his part, and that Ray is bound at law, and, as it appears to us, not less in equity, to pay the consideration. But it is contended that this payment should be made to the State, in whom the legal estate is supposed to be vested, and who alone can convey it.
To this it is objected by the counsel for the defendant, and it appears to the Court that the objection is well supported. By the authority cited from 2 Powell, 70, on executory contracts, where, after citing a number of cases on the subject, he draws this conclusion: " But the true " principle seems to be, that, in Equity, if the " party agreeing to convey, have a good title, " and be able so to do at the time of the bargain " entered into, and be clear from the imputation " of delay in performing his part of the agree-" ment, the contract is there considered as then " executed; the subsequent conveyance being " only matter of form, the substance being the " bargain.” This appears to come fully up to the present case.
*496 1st. M'Culloch, the party agreeing to convey, had a good title, and was able to convey at the time of the bargain entered into.
2d. It does not appear that any delay was imputed to him in performing his part of the contract.
The 4th section of the treaty with Great Britan, respecting British creditors, is likewese relied on by the counsel for the defendants. This proves that whatever claim the State may have to the lands of British subjects, it can have none to the debts due to them. This appears to us, to be a bona fide debt due to a British subject, contracted before the revolution, on an equitable consideration; for we consider the new bond taken by George M'Culloch in the same condition as that given to Henry Eustace M'Culloch, it being founded on the original contract, and for the same consideration. We would ask, what has the State to give in return for this money? It must be answered, nothing which can be useful to Ray; any conveyance which the State can make to him, will not put him in a better condition than he is at present; the State would, therefore, receive the money without any valuable consideration; the most it can pretend to, is a mere naked right, without an interest.
It might be observed, that the claim of the University to the land, is barred by the possession which Ray holds under the conveyance from George M’Culloch, which is of more than seven years continuance.
*497 Thus it appears to us, that Ray’s right to the land is secured by the constitution and act of limitation; M'Culloch's right to recover the money, is secured by the 4th article of the British treaty; that, therefore, the money must be paid to M'Culloch, from whom the consideration was received—or to no one.
Upon the whole, we are of opinion, that Ray having, on his part, received the full benefit of his contract with M'Culloch, he has no equitable claim on the interference of this court, to screen him from a discharge of his part of the contract, and that being in possession of the substance, he may remain indifferent with respect to the form or shadow.—Therefore, that no injunction issue, and the bill be dismissed with costs.